

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00169-CR

———————————————————

OSCAR JEOVANY ARDON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. F21-3008-462

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

A jury convicted Appellant Oscar Jeovany Ardon of four counts of indecency with a child by sexual contact. *See* Tex. Penal Code § 21.11(a)(1), (d). The jury assessed punishment at confinement for five years for each conviction, and the trial court pronounced the punishment, ordering that the sentences run consecutively. *See id.* §§ 12.32, 12.33, 3.03(b)(2)(A), (b)(2–a)(A). In his first issue, Ardon argues that the trial court abused its discretion by designating an improper outcry witness under Article 38.072 of the Texas Code of Criminal Procedure. In his second issue, Ardon complains that the trial court abused its discretion by excluding testimony about the complainant's prior sexual experiences under Texas Rules of Evidence 107 and 412.[1] Because we will hold that, in both instances, any error was harmless, we will affirm the trial court's judgments.

---

[1]The Texas Supreme Court repealed former Rule 412 and replaced it with a new rule; the final amended version took effect on January 1, 2026. *See* Sup. Ct. of Tex., *Final Approval of Amendments to Texas Rule of Evidence 412*, Misc. Docket No. 25-9102 (Dec. 19, 2025). But "[a]s stated in Misc. Dkt. No. 25-9064, for criminal proceedings commencing before September 1, 2025, the rule in effect on the date the proceeding commences governs." *Id.* Thus, the new rule and amendments are inapplicable here. All citations to Rule 412 are to the prior version, which continues to govern those cases commencing before September 1, 2025.

## II. BACKGROUND

The complainant, who was seventeen years old at the time of trial, testified that when she was between ten and thirteen years old, Ardon—her stepfather—sexually assaulted her multiple times. Ardon had married the complainant's mother when the complainant was two years old.

Ardon does not challenge the evidentiary sufficiency of his convictions; rather, he argues that the trial court improperly designated Priscilla Valenzuela, the complainant's forensic interviewer, as the outcry witness and that the trial court erred in excluding evidence of the complainant's prior sexual activities. Ardon claims that these errors improperly bolstered the complainant's testimony and prevented him from presenting a meaningful defense.[2]

The trial court determined Valenzuela's status as the outcry witness at a preliminary hearing. During the preliminary hearing, Valenzuela testified that she had been employed with the Children's Advocacy Center (CAC) and had conducted a forensic interview with the complainant on April 22, 2021. Valenzuela testified that she believed she was the first person over eighteen to whom the complainant had shared details about the offenses.

---

[2]Ardon's defensive theory throughout trial was that the complainant "had already been exposed to sexually explicit material, that she'd been looking into it, and that that could have influenced her experience."

The complainant also testified during the preliminary hearing and stated that although she had spoken to several adults about the abuse, including her counselor, her father, her stepmother, and her mother, she had not given any of them all the details about the prior abuse. But she also admitted that she could not recall exactly what details she had shared with any of them. The complainant affirmed that the first adult she had shared all "[t]he details" of the offenses with was Valenzuela during her CAC interview.

After the preliminary hearing concluded, the trial court—without any explanation of its reasoning—designated Valenzuela as the outcry witness. Ardon then requested a running objection to Valenzuela's testimony, and the trial court granted the request.[3]

During trial, Valenzuela testified about the nature of the sexual assault against the complainant: On multiple occasions, Ardon touched the complainant's chest with his hands and rubbed his genitals on the complainant's genitals through each of their clothing. The complainant testified to the same behaviors during her trial testimony.

The complainant also testified that—at one point—she had tried to talk to her mother about the sexual abuse but her mother had "freaked out," and the complainant regretted talking to her mother. She did not tell her mother who had abused her, and

_____

[3]During trial, Ardon renewed his objection to Valenzuela's testimony. The trial court again overruled the objection, permitting Valenzuela to testify, and granted Ardon a running objection.

4

she had begged her mother not to tell the police or Ardon.[4]  Despite this request, the complainant's mother spoke to Ardon about it.  Ardon then spoke to the complainant, telling her that "he knew that [she] had told [her] mom" and that she needed "to be careful" about what she said during therapy "because they're trained to get things out of people."  Ardon also told the complainant that "if [she] wanted to tell, that [she] could] and that he would own up to it and he would take responsibility."

Carrollton Police Department Detective Erika Honeycutt, who was assigned to the case after Valenzuela conducted the forensic interview, also testified.  As part of her investigation, Detective Honeycutt reviewed the forensic interview recording, organized a one-party-consent phone call[5] between the complainant's mother and Ardon, and interviewed Ardon about the complainant's allegations.  During the interview, Detective Honeycutt told Ardon that the complainant had accused him of sexual abuse.  Whenever the detective told Ardon this, he "nodded and just said

---

[4]During her testimony, the complainant expressed that she did not want her mother and Ardon to "break up, divorce, or for [Ardon] to get in trouble by anyone," because she considered him her dad and "loved him very much like a dad."  The complainant also stated that by the time she had told her mother about the sexual abuse, Ardon "had stopped doing it."

[5]A portion of the recording of the call was played during trial.  The complainant's mother asked Ardon if he had touched the complainant, and he responded with eight seconds of silence; she asked him again, and again, he responded with about eight seconds of silence; finally, she asked him to "please tell [her]," and Ardon responded, "no, no, no."  On cross-examination, Detective Honeycutt confirmed that Ardon was at work—at a church—during this call, and defense counsel implied that his location might explain the long pauses on the phone call.

[']okay.[']" Detective Honeycutt testified that Ardon seemed almost "speechless in a way."

Throughout the interview, Ardon maintained that he did not sexually abuse the complainant and explained that he had played physical games with the children that might have been misinterpreted.[6] Ardon told Detective Honeycutt that "if [the complainant] thought [Ardon] touched her inappropriately . . . while playing those games, she never told [him]."

There was also testimony from Joanne Sulewski, the sexual assault nurse examiner (SANE), who had compiled a report based on her examination of the complainant in May 2021. A redacted copy of Sulewski's SANE Report was offered into evidence, and the defense objected on grounds of hearsay, optional completeness, motive, and due process. The trial court overruled the objections, and the report was admitted with redactions.[7]

---

[6]Ardon described the "wiggle (sic) monster" game where he would "chase the kids around" and "if he caught one of them, he would bear hug them and . . . wiggle them side to side." The complainant also testified that she played games with Ardon— like tag and "tickle monster"—that gradually became inappropriate when "[Ardon's] hands would wander towards [her] chest" and he would "get on top of [her]."

[7]We will address the redactions in our discussion of Ardon's second issue. *See* Tex. R. App. P. 47.1.

6

Following the close of the evidence,[8] the jury found Ardon guilty of the offenses of indecency with a child as alleged in the indictment. Ardon was sentenced to five years' imprisonment for each count, to run consecutively, and this appeal followed.

### III. DISCUSSION

Ardon raises two issues on appeal, both evidentiary in nature. Ardon alleges that the trial court abused its discretion by naming Valenzuela the outcry witness and by excluding evidence about the complainant's prior sexual experiences. He claims that these errors harmed him because Valenzuela's testimony bolstered the complainant's testimony and because the exclusion of the evidence about the complainant's prior sexual experiences prevented him from fully developing his defensive theory.

The State responds that the trial court did not err, arguing that: (1) Valenzuela was the proper outcry witness because there was evidence demonstrating that she was "the first person over the age of eighteen to whom [the complainant] made statements that described the alleged offenses in a discernible manner"; (2) the redacted statements in the SANE Report were "irrelevant and not necessary to make [the complainant's] statements concerning the abuse in this case 'fully understood'"; and (3) the complainant's prior access of pornographic websites "is a past sexual behavior that is

---

[8]During cross-examination of the complainant, several defense exhibits were admitted that depicted images of a sexual nature from a graphic novel that the complainant had read at some point close in time to the sexual abuse.

protected under Rule 412." Alternatively, the State argues that all three alleged errors were harmless under Texas Rule of Appellate Procedure 44.2(b).

## A. Standard of Review

We review a trial court's ruling to admit or exclude evidence for an abuse of discretion and will not reverse the ruling of the trial court absent a clear abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024); *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

Outcry-witness testimony is evaluated under the same standard. Because of the difficulty that often arises in deciding who is a proper outcry witness, trial courts maintain "broad discretion" over such decisions. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). Under this standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

The erroneous exclusion of evidence—including outcry testimony—is generally subject to a nonconstitutional-harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See Good v. State*, No. 02-24-00239-CR, 2026 WL 547519, at *5 n.13 (Tex.

8

App.—Fort Worth Feb. 26, 2026, pet. ref'd) (mem. op., not designated for publication) (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)); *State v. Sanchez*, 722 S.W.3d 58, 74 (Tex. App.—Fort Worth 2025, pet ref'd) (applying Rule 44.2(b) to outcry testimony). Nonconstitutional error is disregarded unless it affects a defendant's substantial rights. *Nguyen v. State*, 693 S.W.3d 732, 740 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (citing Tex. R. App. P. 44.2(b)). "If the error ha[s] no influence or only a slight effect on the verdict, then it is harmless." *Id.* (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). To determine the effect on the verdict, we consider (1) the character of the alleged error and its connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and weight of additional evidence supporting the verdict, and (4) whether the State emphasized the error. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021) (citing *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)).

**B. Outcry Witness Testimony**

In his first issue, Ardon complains that Valenzuela was not "the 'first person over the age of 18' [the complainant] informed about the alleged sexual abuse." Ardon argues that he proved that "the complainant informed no less than four separate, trusted adults about the purported sexual abuse" before she ever met with Valenzuela, raising "enough evidence to show that [the complainant] communicated the details of the sexual abuse in a discernable manner to at least one of the [four] adults." Ardon alleges that Valenzuela's testimony was inadmissible hearsay and improperly bolstered

9

the complainant's testimony—resulting in a substantial influence on the outcome of the trial.

## 1. Applicable Law

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements [guarantee] their reliability." *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072, also known as the outcry statute, creates a hearsay exception in certain child-sexual-offense prosecutions. Tex. Code Crim. Proc. art. 38.072; *Crump v. State*, No. 02-24-00063-CR, 2025 WL 18288, at *2 (Tex. App.—Fort Worth Jan. 2, 2025, pet. ref'd) (mem. op., not designated for publication).

Article 38.072 permits testimony from one outcry witness per event—that is, "the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." Tex. Code Crim. Proc. art. 38.072, § 2(a)(3); *see Crump*, 2025 WL 18288, at *2; *Gibson v. State*, 595 S.W.3d 321, 326 (Tex. App.—Austin 2020, no pet.). Courts construe "about the offense" to mean a statement that "in some discernible manner describes the alleged offense." *Garcia*, 792 S.W.2d at 91. "[T]he statement must be more than . . . a general allusion" of sexual abuse. *Id.* Thus, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense. *Id.*; *see, e.g.*, *Moore v. State*, No. 02-23-00152-CR, 2025 WL

10

353068, at *6–7 (Tex. App.—Fort Worth Jan. 30, 2025, no pet.) (mem. op., not designated for publication) (affirming trial court's determination that because a child's prior statements to her mother lacked sufficient detail, the proper outcry witness was an adult who later interviewed the child).

In addition, an adult who does not remember the outcry cannot be the outcry witness. *Petty v. State*, No. 02-21-00130-CR, 2022 WL 4545532, at *5 (Tex. App.—Fort Worth Sept. 29, 2022, pet. ref'd) (mem. op., not designated for publication); *see, e.g., Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd) (holding that victim's mother and stepfather were not proper outcry witnesses when they both testified that they had no memory of the outcry). A trial court may allow hearsay testimony from more than one outcry witness if each witness testifies about different offenses. *See Crump*, 2025 WL 18288, at *2; *Gibson*, 595 S.W.3d at 326.

"In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection." *Sanchez*, 722 S.W.3d at 75 (quoting *Galvan v. State*, No. 08-23-00162-CR, 2024 WL 1599208, at *6 (Tex. App.—El Paso Apr. 12, 2024, no pet.) (mem. op., not designated for publication)); *see also Gibson*, 595 S.W.3d at 327 (collecting cases holding the same).

11

## 2. Analysis

Assuming without deciding that the trial court improperly designated Valenzuela as an outcry witness, such error did not harm Ardon.

During trial, there was unobjected-to testimony from the complainant in support of the verdict. Additionally, the complainant's testimony set forth details of the sexual abuse that were very similar to those described in Valenzuela's testimony,[9] making any error in the admission of Valenzuela's testimony harmless. *See Sanchez*, 722 S.W.3d at 75; *Gibson*, 595 S.W.3d at 327; *Lamerand v. State*, 540 S.W.3d 252, 259 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

Thus, because the same or similar evidence about the sexual abuse that the complainant suffered was admitted without objection, we cannot conclude that Valenzuela's outcry-witness testimony had a substantial and injurious effect or influence on the jury's verdict. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Accordingly, any error in designating Valenzuela the outcry

---

[9]Ardon acknowledges as much on appeal but argues that he "challenged [the complainant's] credibility and objected to the admission of the SANE report and [the complainant's] hearsay statements to the [SANE]." However, none of these arguments establish harm.

12

witness was harmless.  *See Gibson*, 595 S.W.3d at 327; *Lamerand*, 540 S.W.3d at 259.  We overrule Ardon's first issue on appeal.

## C.  Excluded Evidence

In his second issue, Ardon complains about two areas of excluded evidence that he alleges would show the complainant's motive or interest.  First, the trial court admitted a redacted copy of Sulewski's SANE Report, which excluded statements about a prior sexual encounter the complainant had with another child while she was in first grade.  Second, the defense was restricted to asking Detective Honeycutt whether the complainant's phone had been taken away because she had accessed "inappropriate websites," rather than asking whether the complainant had accessed "pornographic websites."  Ardon argues that the excluded evidence was admissible under Rule 107 and Rule 412 and that the exclusion infringed on his right to present a meaningful defense.[10]

---

[10]Ardon makes an argument that his Sixth Amendment rights were violated when he was not permitted to fully cross-examine Detective Honeycutt.  *See* U.S. Const. amend. VI.  However, the Sixth Amendment right to confront witnesses "is not unqualified . . . and the trial judge has wide discretion in limiting the scope and extent of cross-examination."  *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). A defendant does not have an absolute constitutional right to impeach the general credibility of a witness in any manner he chooses—but the constitution does require that a defendant be able to cross-examine "a witness concerning possible motives, bias, and prejudice" so that he might present a vital defensive theory.  *Id.* at 562–63. However, "most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence."  *Id.* at 561.  Because here we can resolve the second issue by looking to the applicable Texas Rules of Evidence, we do not explore Ardon's constitutional argument.  *See* Tex. R. App. P. 47.1.

13

### 1. Applicable Law:  Rules 107 and 412

Under Rule 107, known as the rule of optional completeness, "[i]f a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject."  Tex. R. Evid. 107.  Additionally, "[a]n adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent."  *Id.*  In other words, "Rule 107 permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party."  *Rouleau v. State*, No. 02-24-00247-CR, 2025 WL 1197379, at \*2 (Tex. App.—Fort Worth Apr. 24, 2025, no pet.) (mem. op., not designated for publication) (citing *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007); *Jones v. State*, 963 S.W.2d 177, 182 (Tex. App.—Fort Worth 1998, pet. ref'd) (per curiam)).  The rule is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing.  *Walters*, 247 S.W.3d at 218.  Rule 107 does not permit introducing other similar, but inadmissible, evidence unless doing so is necessary to explain properly admitted evidence.  *Id.*

Rule 412, known as the "rape shield" law, is designed to limit abusive, embarrassing, and irrelevant inquiries into a complainant's private life.  *Alvarez v. State*, No. 02-23-00108-CR, 2024 WL 2066361, at \* 6 (Tex. App.—Fort Worth May 9, 2024, pet. ref'd) (mem. op., not designated for publication) (first citing *Hammer*, 296 S.W.3d

14

at 566; and then citing *Dees v. State*, No. 02-12-00488-CR, 2013 WL 6869865, at \*6 (Tex. App.—Fort Worth Dec. 27, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication)).  Generally, evidence of a "specific instance of a victim's past sexual behavior" is not admissible.  Tex. R. Evid. 412(a)(2).  But Rule 412(b) provides that a defendant may offer evidence of a specific instance of an alleged victim's past sexual behavior if the trial court determines that the evidence's probative value outweighs the danger of unfair prejudice to the alleged victim and that the evidence:

> (A) is necessary to rebut or explain scientific or medical evidence offered by the prosecutor;
>
> (B) concerns past sexual behavior with the defendant and is offered by the defendant to prove consent;
>
> (C) relates to the victim's motive or bias;
>
> (D) is admissible under Rule 609; or
>
> (E) is constitutionally required to be admitted[.]

Tex. R. Evid. 412(b)(2), (3).

The Rule 412 balancing test generally favors excluding the evidence.  *Alvarez*, 2024 WL 2066361, at \*7 (citing *Zamora v. State*, No. 08-99-00284-CR, 2000 WL 1757960, at \*9 (Tex. App.—El Paso Nov. 30, 2000, pet. ref'd) (not designated for publication)). The burden is on the proponent of the evidence—in this case, the defendant—to show that its probative value outweighs the danger of unfair prejudice.  *Id.*

15

## 2. SANE Report

The SANE Report that was admitted into evidence included redactions; defense counsel offered Defense Exhibit B, an unredacted version of the same report, for record purposes only. The redactions all related to a single alleged prior sexual encounter the complainant had with another child when she was in the first grade.

## 3. Detective Honeycutt's Testimony

During cross-examination of Detective Honeycutt, the defense asked, "[I]n [Ardon's] interview, did you discover that [he] had to take away [the complainant's] phone because she was looking at pornographic –." The question was cut off by the State's objection, and there was a discussion held out of the jury's presence about the admissibility of the question and any reference to the complainant's prior sexual experience. The defense argued that it was not attempting to "explor[e] [the complainant's] sexuality or any prior sex acts that she has done." The trial court ruled that the defense was permitted to ask Detective Honeycutt if the complainant "opened up an inappropriate website, and [whether,] based on that, . . . her phone [was] taken away."

When the jury was seated again in the courtroom, the trial court instructed the jury on the matter, stating, "The response to the last question, you are to disregard that." The defense then asked Detective Honeycutt, if, during her interview with Ardon, she had "learn[ed] that [the complainant] had accessed inappropriate websites" and that her phone had been taken away by Ardon. The detective responded in the affirmative.

16

### 4. Analysis

Ardon argues that both the redacted portions of the SANE Report and the question about the complainant having accessed pornographic websites were admissible under Rule 107. We disagree. First, Rule 107 only permits the introduction of otherwise inadmissible evidence when it is necessary to fully and fairly explain a matter "opened up" by the adverse party. *See Rouleau*, 2025 WL 1197379, at *2. This rule does not permit introducing other similar, but inadmissible, evidence unless doing so is necessary to explain properly admitted evidence. *Walters*, 247 S.W.3d at 218.

Here, the redacted portions of the SANE Report, although also an allegation of sexual contact, were not on the same subject as the admitted portions of the SANE Report. *See Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011) ("[T]he omitted portion of the statement must be on the same subject and must be necessary to make [the document] understood." (internal quotation marks omitted)) (citing *Sauceda v. State* 129 S.W.3d 116, 123 (Tex. Crim. App. 2004)); *Hailey v. State*, 413 S.W.3d 457, 468 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding the same); *see also* Tex. R. Evid. 107. The alleged sexual contact that the complainant experienced when she was in first grade is clearly unrelated to the allegations against Ardon, as the alleged contact was with another child and happened several years before Ardon's sexual abuse of the complainant. Thus, because the redacted statements are not on the same subject as the statements about Ardon's abuse of the complainant, there is no logical argument that would support Ardon's claim that it was necessary to include the redacted portions to

17

better explain the portions of the report related to the abuse from Ardon. *See Pena*, 353 S.W.3d at 814; Tex. R. Evid. 107; *see also Lang v. State*, No. 02-22-00298-CR, 2024 WL 273591, at *5–6 (Tex. App.—Fort Worth Jan. 25, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that excluded portions of a SANE Report were not necessary to understand the SANE testimony and there was no evidence that the jury misunderstood the SANE testimony).

And as related to the cross-examination of Detective Honeycutt, there is no "incompleteness" to correct or explain. *See generally* Tex. R. Evid. 107 (permitting the introduction of evidence that is of the same subject as previously offered evidence where it is necessary to explain such evidence). The trial court permitted Ardon to ask if the complainant had accessed "inappropriate websites" on her phone, following an instruction from the trial court that the jury was to disregard the *response* to the prior question. There had been no response to the prior question about the complainant's viewing of pornography on her phone. Thus, despite the trial court's intent with its instruction, the jury was permitted to consider the prior question asked—in which Detective Honeycutt was cross-examined about whether the complainant had accessed pornography on her phone. *See Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd) (relying on the established presumption that the jury follows the trial court's instructions unless there is evidence of the contrary); *cf. Irsan v. State*, 708 S.W.3d 584, 615 (Tex. Crim. App. 2025) (holding lawyer's questions are not themselves

18

evidence and that the alleged error that the lawyer asserted facts through a question did not affect the appellant's substantial rights).

Further, even if the jury understood the trial court's misstatement, the context of the question that was ultimately asked—about the complainant accessing "inappropriate websites"—was not likely to be misunderstood by the jury in light of the other sexually explicit evidence that had been introduced during trial.[11] *See Sauceda*, 129 S.W.3d at 123 (requiring that the omitted evidence be necessary for the statement to be understood or avoid any false impression from hearing only a part of the evidence). Accordingly, Ardon's Rule 107 argument fails.

Ardon also argues that both the redacted portions of the SANE Report and the question about the complainant having accessed pornographic websites were admissible under Rule 412. Again, we disagree.

First, there is no evidence in the record, or offered outside the presence of the jury, to suggest that the complainant was motivated or biased to lie about the sexual assaults. *See* Tex. R. Evid. 412(b)(d)(C). Instead, the record supports the opposite— that the complainant was distraught about the abuse and was unwilling to immediately name Ardon as the perpetrator because she loved him like a father and did not want to

---

[11]Twelve defense exhibits were admitted during the defense's cross-examination of the complainant, all of which depicted sexually explicit activities from a graphic novel that the complainant admitted she had read around the time that the abuse had allegedly occurred.

19

get him into trouble. Thus, to the extent that Ardon alleges that the excluded evidence supports a potential bias or motive of the complainant, we find no support for that in the record. *See Rojas v. State*, No. 02-15-00144-CR, 2016 WL 6648748, at *3 (Tex. App.—Fort Worth Nov. 10, 2016, pet. ref'd) (mem. op., not designated for publication) ("Moreover, to meet his burden, [a]ppellant had to show a definite and logical link between [the complainant's] alleged past sexual conduct and her alleged motive to lie." (citing *Stephens v. State*, 978 S.W.2d 728, 734–35 (Tex. App.—Austin 1998, pet. ref'd))).

Second, Ardon asserts that the redacted portions of the SANE Report "explain a distinctly similar sexual experience" that could "explain the [complainant's] knowledge about the sexual matters in question," making it admissible under Rule 412(b)(2)(E).[12] But for evidence to be admissible to show a child's alternative basis for knowledge of sexual matters, "the defendant must establish that the prior acts clearly occurred *and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question.*" *Estes v. State*, 487 S.W.3d 737, 753 (Tex. App.—Fort Worth 2016), *rev'd on other grounds*, 546 S.W.3d 691 (Tex. Crim. App. 2018) (alteration in

---

[12]A number of states have held that the United States Constitution compels the admission of evidence to show an alternative basis for a child victim's knowledge of sexual matters. *See, e.g.*, *State v. Dodson*, 219 Wis. 2d 65, 580 N.W.2d 181, 191 (1998); *State v. Budis*, 125 N.J. 519, 593 A.2d 784, 791 (1991); *Commonwealth v. Ruffen*, 399 Mass. 811, 507 N.E.2d 684, 688 (1987); *State v. Howard*, 121 N.H. 53, 426 A.2d 457, 462 (1981). The constitutional provisions most often implicated in cases of this type are the Sixth Amendment right of confrontation and the Fourteenth Amendment due process right to a fair trial. *See State v. Clarke*, 343 N.W.2d 158, 161 (Iowa 1984).

20

original) (citing *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd)).

Additionally, before any evidence of an alleged victim's sexual behavior may be admitted under Rule 412(b)(2)(E), it must be relevant to a material issue in the case. *See Hale*, 140 S.W.3d at 396; *see also* Tex. R. Evid. 401 (requiring that evidence be relevant to be admissible). Relevant evidence is evidence having any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401. Irrelevant evidence is not admissible. Tex. R. Evid. 402. In this case, whether the complainant was sexually assaulted as a first grader does not make it more or less probable that she had "knowledge about the sexual matters in question," particularly in light of the sexually explicit graphic novel pages that were already admitted into evidence.

And though it is conceivable that the complainant could have gained knowledge of sexual matters from either "pornographic" or "inappropriate" websites—regardless of the term used—rather than from Ardon, there is no evidence in the record that any of the sexual acts the complainant allegedly viewed on these websites "*so closely resembled those of the present case that they could explain the [complainant's] knowledge about the sexual matters in question.*" *Estes*, 487 S.W.3d at 753 (emphasis in original) (citing *Hale*, 140 S.W.3d at 396); *see Bryan v. State*, No. 2-08-379-CR, 2010 WL 1137038, at *3 (Tex. App.—Fort Worth Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Hale* and concluding that evidence of the child victim's prior sexual experience was

inadmissible because the defendant "failed to establish that the prior assault was sufficiently similar to [the defendant's] assault."). Accordingly, Ardon's Rule 412 argument fails.

However, even if we presume that the trial court erred, the record does not demonstrate that the complained-of exclusions harmed Ardon. *See* Tex. R. App. P. 44.2(b). Here, the only complained-of evidence that was excluded—the redacted portions of the SANE Report—would have merely shown that the complainant may have also been sexually assaulted by another child once when she was in first grade. It is unlikely that, had the jury known about the alleged abuse in first grade, this information would have meaningfully supported Ardon's defensive theory given that the complainant was initially unwilling to name Ardon as her abuser and that she provided detailed testimony about Ardon's sexual abuse of her at trial.[13] *See Good*, 2026 WL 547519, at *6–7 (holding that, where the State relied on the complainant's testimony and the defensive theory was that the allegations were fabricated in some way, any error in excluding evidence of the complainant's prior sexual abuse of his sister was harmless); *see also Walters*, 247 S.W.3d at 221 (finding harmless error where the

---

[13]The jury is the sole judge of the evidence and credibility of the witnesses and was permitted to believe the complainant's testimony about the sexual abuse, as well as her testimony about reading the sexually explicit graphic novel and her statement that the experience of the characters in that story was different from her experience with Ardon. *See Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021).

22

excluded evidence did not prevent the defendant from presenting his defensive theory to the jury).

Likewise, if we assume that the jury understood the trial court's misstatement about disregarding the prior *response*[14] rather than the prior question during the defense's cross-examination of Detective Honeycutt, the context of the question about "inappropriate websites" clearly implied the websites were of a sexual nature. And even if it was not implied to the jury when the question was asked, during the defense's closing argument, the graphic novel pages and the complainant's "inappropriate" searches were discussed simultaneously—fully impressing upon the jury Ardon's defensive theory that the complainant may have been "influence[d by] and expos[ed] to explicit material[,] creat[ing] a motive or interest in fabricating allegations of specific sexual abuse and attributing them to [Ardon]." *See Bleimeyer v. State*, 616 S.W.3d 234, 253 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Often error in the exclusion of evidence is harmless if the evidence is cumulative of other evidence or the nature of the evidence is established through other means."); *see also Walters*, 247 S.W.3d at 221. Considering the jury's verdicts on all four counts, the jury did not find Ardon's

---

[14]As we have previously noted, Detective Honeycutt was not permitted to answer the question, so there was no response to be struck, leaving the jury free to consider the lingering question about the complainant viewing pornography on her phone— providing the defense with its desired clarification of "inappropriate" websites.

23

defensive theory to be persuasive. *See Nguyen*, 693 S.W.3d at 740 ("If the error had no influence or only a slight effect on the verdict, then the error is harmless.").

Ultimately, there is nothing in the record to support that there was any substantial or injurious effect on the jury's verdict because of the complained-of evidentiary exclusions, making any error on the part of the trial court harmless. *See* Tex. R. App. P. 44.2(b); *see also Macedo*, 629 S.W.3d at 240; *Nguyen*, 693 S.W.3d at 740. We overrule Ardon's second issue on appeal.

## IV. CONCLUSION

Having overruled both of Ardon's issues, we affirm the judgments of the trial court.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 6, 2026